UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GENTRY GERAURD CARRIER,
  Petitioner,

v.            Case No. 8:20-cv-2613-KKM-SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,
  Respondent.
_____

## ORDER

  Gentry Geraurd Carrier, a Florida prisoner, timely[1] filed a counseled Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, challenging his state court conviction based on alleged failings of his trial counsel. (Doc. 1.) Having considered the petition, (*id.*), the response in opposition, (Doc. 10), and Carrier's reply, (Doc. 13), the petition is denied. Because reasonable jurists would not disagree, a certificate of appealability also is not warranted.

_____

[1] A state prisoner has one year from the date his judgment becomes final to file a § 2254 petition. *See* § 2244(d)(1). This one-year limitation period is tolled during the pendency of a properly filed state motion seeking collateral relief. *See* § 2244(d)(2). Carrier's convictions and sentences were affirmed on September 27, 2013. (Doc. 10-2, Ex. 8.) His judgment became final 90 days later, on December 26, 2013, when the time to petition the Supreme Court of the United States for a writ of certiorari expired. *See Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002). After 343 days of untolled time elapsed, Carrier filed his motion for postconviction relief on December 5, 2014. (Doc. 10-2, Ex. 10.) That motion remained pending until the state appellate court's mandate issued on October 20, 2020. (Doc. 10-2, Ex. 24.) After another 16 days of untolled time passed, Carrier filed his § 2254 petition on November 6, 2020. (Doc. 1.) Therefore, a total of 359 days of untolled time elapsed, and Carrier's petition is timely.

## I.    BACKGROUND

A state court jury convicted Carrier of armed burglary of a dwelling, grand theft of a firearm, grand theft, and conspiracy to commit burglary of a dwelling. (Doc. 10-2, Ex. 3.) The trial court sentenced him to life in prison. (Doc. 10-2, Ex. 4.) The state appellate court per curiam affirmed the convictions and sentences. (Doc. 10-2, Ex. 8.) Carrier's motion for postconviction relief, filed under Florida Rule of Criminal Procedure 3.850, was denied. (Doc. 10-2, Exs. 15 & 19.) The state appellate court per curiam affirmed. (Doc. 10-2, Ex. 23.)

## II.    STANDARD OF REVIEW UNDER SECTION 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "The power of the federal courts to grant a writ of habeas corpus setting aside a state prisoner's conviction on a claim that his conviction was obtained in violation of the United States Constitution is strictly circumscribed." *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1093 (11th Cir. 2022).

Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This section "defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." *Id.* at 404. First, a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

Second, a decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*

*v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). But the habeas court is "not limited by the particular justifications the state court provided for its reasons, and [it] may consider additional rationales that support the state court's determination." *Jennings v. Secretary, Fla. Dep't of Corr.*, 55 F.4th 1277, 1292 (11th Cir. 2022). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that

4

does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. The state may "rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

For purposes of § 2254(d)(2), "it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.' " *Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022) (quotations omitted). "An unreasonable determination of the facts occurs when the direction of the evidence, viewed cumulatively, was too powerful to conclude anything but the petitioners factual claim." *Teasley v. Warden, Macon State Prison*, 978 F.3d 1349, 1355 (11th Cir. 2020) (internal quotation marks and alterations omitted). A state court's findings of fact are presumed correct, and a petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even where a petitioner succeeds in rebutting the presumption, he must show that the state court's decision is "based on" the incorrect factual determination. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022). This is because a state court decision may still be reasonable "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an 'unreasonable determination of the facts' and isn't 'based on' any such determination." *Id.*

5

(quoting *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1224–25 (11th Cir. 2021)

(Newsom, J., concurring)).

In addition to satisfying the deferential standard of federal court review of a state

court adjudication, a federal habeas petitioner must exhaust his claims by raising them in

state court before presenting them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state

courts an opportunity to act on his claims before he presents those claims to a federal court

in a habeas petition."). A petitioner satisfies this exhaustion requirement if he fairly presents

the claim in each appropriate state court and alerts that court to the federal nature of the

claim. *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

The doctrine of procedural default provides that "[i]f the petitioner has failed to

exhaust state remedies that are no longer available, that failure is a procedural default which

will bar federal habeas relief, unless either the cause and prejudice or the fundamental

miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th

Cir. 2001). A petitioner shows cause for a procedural default when he demonstrates "that

some objective factor external to the defense impeded the effort to raise the claim properly

in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner

demonstrates prejudice by showing that "there is at least a reasonable probability that the

result of the proceeding would have been different" absent the constitutional violation.

*Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Carrier brings a claim for ineffective assistance of trial counsel under the Sixth Amendment. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not

7

warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

## IV.   <u>ANALYSIS</u>

### A. Ground One

Carrier argues that trial counsel had an actual conflict of interest that prevented her from providing effective representation. When Carrier and co-defendant Kyle Pierre were charged, they were both represented by Assistant Public Defender Julissa Fontan. (Doc. 10-2, Ex. 28, p. 7.) Before trial, Fontan filed a motion to withdraw from representing

8

Pierre. (*Id.*, pp. 13.) The state trial court granted the motion and appointed conflict-free counsel, Scott McCluskey, to represent Pierre. (*Id.*, pp. 13, 115.) Carrier asserts that Fontan's continuing duty of responsibility to Pierre prevented her from investigating and calling Pierre to support Carrier's defense. Therefore, he contends, this alleged conflict adversely affected Fontan's representation because she could not pursue a plausible line of defense.

This case involved the burglary of a residence. On August 26, 2011, after receiving a tip, police surveilled an address on Orient Road in Hillsborough County, Florida. (Doc. 10-2, Ex. 26, p. 131.) They observed Carrier and Pierre leave in a truck. (*Id.*, p. 133.) Police followed the truck as it stopped at a gas station and went to several residential areas. (*Id.*, pp. 134-43.) A police helicopter pilot observed the truck arrive at a residence on Peppersong Drive and back up to the house, and observed two men get out of the truck and go inside for about 20 minutes. (*Id.*, pp. 207-08.) Police confirmed that the house on Peppersong Drive had been burglarized. (*Id.*, p. 208.) When Carrier and Pierre returned to the Orient Road property, police saw them unloading items from the truck and recovered items that had been taken from the Peppersong Drive residence, including firearms. (*Id.*, pp. 147-70, 208-10, 290-92.)

At a postconviction evidentiary hearing, Fontan stated that initially she had no reservations about a conflict due to representing both Carrier and Pierre because they gave

consistent statements that Carrier had only given Pierre a ride that day. (Doc. 10-2, Ex. 28, pp. 8-9, 11.) She explained that when she first interviewed Carrier, he told her that he was not involved in the crime and that he had only picked up Pierre. (*Id.*, p. 8.) Fontan stated that "at that time they were both telling [her] the same things." (*Id.*)

But Fontan testified that Pierre's statements changed during her representation. (*Id.*, pp. 22, 24, 123.) Fontan testified that, while Pierre initially stated that Carrier just gave him a ride, as more discovery materials came in, Pierre began saying he was picking things up for a friend, and then finally stated that Carrier knew it was not for a friend and knew what was "going on." (*Id.*, p. 123.) When Carrier's and Pierre's stories no longer aligned, Fontan testified, a conflict had developed and she moved to withdraw from representing Pierre. (*Id.*, pp. 22, 24, 123.)[2]

After McCluskey was appointed to represent Pierre, Pierre entered a plea. (*Id.*, pp. 12-13, 117.) Fontan testified that after Pierre did so, Carrier wanted Fontan to talk to Pierre because Carrier believed that Pierre would revert to his original story that Carrier was not involved. (*Id.*, p. 14.) Since Fontan did not feel comfortable talking to Pierre herself due to her prior representation of him, she conferred with her office's felony bureau chief, and another assistant public defender, Todd Gisclair, talked to Pierre. (*Id.*, pp. 14, 21.)

---

[2] Pierre, who was present at the evidentiary hearing, waived the attorney-client privilege to the extent that Fontan could testify to their conversations for the purpose of the evidentiary hearing. (Doc. 10-2, Ex. 28, pp. 10-11.)

Fontan testified that she and Gisclair discussed Gisclair's interview with Pierre. (*Id.*, pp. 16-17, 36.) Fontan stated that they discussed Pierre's statements to Gisclair as well as Gisclair's impression that Pierre would not make a good witness because "it sounded like he was completely lying." (*Id.*, pp. 17, 28.) In addition, Fontan believed that Pierre's statements were inconsistent with evidence about law enforcement's surveillance and recovery of stolen items. (*Id.*, pp. 26-27.) Fontan testified that she and Carrier discussed concerns about Pierre's credibility and that Carrier, who concurred with her assessment that Pierre would not be a good witness, agreed not to call Pierre. (*Id.*, pp. 17, 28, 37, 124-26.) Fontan testified that reservations about Pierre's credibility prevented her from listing him as a witness and that she was confident Carrier decided not to call Pierre because of Pierre's inconsistent statements. (*Id.*, pp. 30, 132.) Fontan also testified that she would not depose a defense witness because doing so might give the State an understanding of the defense in a case. (*Id.*, pp. 128, 131.) She stated that Pierre was not listed as a witness for either side. (*Id.*, p. 131.)

Pierre testified at the postconviction evidentiary hearing that he went into the residence alone and that he told Carrier his friend had left the door open for him. (*Id.*, p. 44.) Pierre admitted he stole items from the house. (*Id.*) Pierre testified that he told Fontan that Carrier had nothing to do with the burglary, and testified that Carrier was not aware of what he was doing. (*Id.*, pp. 45-46.) Carrier testified that Pierre told him he was going

11

to get things from a friend's house. (*Id.*, pp. 70-71.) He did not believe that this was a burglary. (*Id.*, p. 86.) Carrier testified that he told Fontan that he had nothing to do with the burglary. (*Id.*, p. 87.) Carrier denied that Fontan told him about Pierre's interview with Gisclair or that he agreed not to call Pierre. (*Id.*, pp. 88-91.) Carrier testified that he wanted to call Pierre to show his innocence. (*Id.*, p. 91.)

The state court denied Carrier's conflict-of-interest claim. The state court found that Carrier did not establish entitlement to relief under *Cuyler v. Sullivan*, 446 U.S. 335 (1980), which articulated "the requirements for stating valid ineffective assistance of counsel claims predicated upon alleged conflicts of interest." *Burden v. Zant*, 24 F.3d 1298, 1305 n.11 (11th Cir. 1994). The state court found credible Fontan's testimony regarding her investigation of Pierre and her practice of not deposing defense witnesses. (Doc. 10-2, Ex. 19, pp. 17-19.) The state court found that Carrier's informing counsel that Pierre was willing to testify for him did not give rise to an actual conflict of interest and that counsel's loyalty was not divided because she no longer represented Pierre, Pierre had already pleaded guilty, and Pierre was going to testify on behalf of Carrier. (Doc. 10-2, Ex. 19, p. 18.)

The state court also found that even if Carrier had demonstrated the existence of an actual conflict, he failed to show that any conflict adversely affected counsel's representation of him. (*Id.*) The state court also found that counsel's decision to send another attorney to interview Pierre was not unreasonable and that even though counsel chose not to talk to

12

Pierre, this decision did not compromise Carrier's interests and did not adversely affect her representation of Carrier. (*Id.*, p. 19.) And the state court noted that counsel's practice, as a matter of strategy, was not to depose defense witnesses. (*Id.*)

The state court's decision was reasonable. Under *Cuyler*, "[p]rejudice is presumed" if "the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' " *Strickland*, 466 U.S. at 692 (quoting *Cuyler*, 446 U.S. at 350).[3] A petitioner satisfies the actual conflict prong by citing portions of the record "to suggest an actual conflict or impairment of their interests. . . . Appellants must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative causes of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other."

---

[3] An attorney's conflict of interest may be based upon concurrent or successive representation. Although Fontan's representation of co-defendant Pierre had ceased before the complained-of conduct—that is, her investigation of and failure to call Pierre—this case involves an instance of concurrent representation because Fontan represented Carrier and Pierre at the same time during the pendency of the same state court criminal case. *See McConico v. Alabama*, 919 F.2d 1543, 1546-47 (11th Cir. 1990) (finding that the district court erred in concluding that representation was successive when the attorney's representation of clients overlapped for several months); *Smith v. White*, 815 F.2d 1401, 1405 (11th Cir. 1987) (stating that an attorney's representation of two clients was successive when no evidence indicated that the attorney ever simultaneously represented both clients); *see also Moss v. United States*, 323 F.3d 445, 455 (6th Cir. 2003) (stating that joint representation occurs where a single attorney represents two or more co-defendants "in the same proceeding"). Thus, *Cuyler* is the clearly established federal law that applies to Carrier's claim. *See Schwab v. Crosby*, 451 F.3d 1308, 1324-25 (11th Cir. 2006) (stating that *Cuyler* applies in the context of concurrent representation cases but has never been held by the Supreme Court to apply in successive representation cases).

*Reynolds v. Chapman*, 253 F.3d 1337, 1343 (11th Cir. 2001) (citing *Smith v. White*, 815 F.2d 1401, 1404 (11th Cir. 1987)).

"To prove adverse effect, a defendant needs to demonstrate: (a) that the defense attorney could have pursued a plausible alternative strategy, (b) that this alternative strategy was reasonable, and (c) that the alternative strategy was not followed because it conflicted with the attorney's external loyalties." *Reynolds*, 253 F.3d at 1343 (citing *Freund*, 165 F.3d at 860). The standards established in *Cuyler* and *Strickland* differ significantly. *See, e.g.*, *Freund v. Butterworth*, 165 F.3d 839, 860 (11th Cir. 1999) (referring to the *Cuyler* standard as "more lax" than the *Strickland* standard).

The state court did not unreasonably apply *Cuyler*. Even assuming a conflict existed, Carrier does not show that any conflict adversely affected Fontan's representation of him. The state court found Fontan's testimony credible regarding her investigation of Pierre. (Doc. 10-2, Ex. 19, p. 17.) The state court's credibility finding is a finding of fact that is presumed correct. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct unless [the petitioner] rebuts the presumption by clear and convincing evidence." (citing 28 U.S.C. § 2254(e)(1)). Carrier does not rebut the presumption of correctness by clear and convincing evidence.

14

Carrier does not show that a reasonable alternative course was available and that Fontan did not pursue it because of her loyalty to Pierre. Fontan considered whether to call Pierre but decided not to because of significant concerns about his credibility. Based on Gisclair's interview of Pierre, as well as Fontan's knowledge of the case, Fontan had information from which to assess whether calling Pierre was desirable. Carrier does not show that Fontan's having another attorney interview Pierre adversely impacted her representation. To the extent Carrier suggests that Fontan would have come to a different conclusion had she personally interviewed Pierre, his claim is speculative. But "speculation is insufficient to carry the burden of a habeas corpus petitioner." *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) (citation omitted).

Fontan further testified that she would not have deposed Pierre because he would have been a defense witness. The state court found this testimony credible, (Doc. 10-2, Ex. 19, pp. 18-19), and Carrier does not rebut the presumption of correctness afforded to that finding by clear and convincing evidence. *See Rolling*, 438 F.3d at 1301. Further, Carrier does not show that any confidential information that Fontan learned while representing Pierre informed her choices in a way adverse to Carrier. The testimony accepted as credible testimony shows that Fontan's decisions concerning Pierre were based on her conclusion that he would not be a viable defense witness, not because she was concerned with loyalty to Pierre as her former client.

15

As Carrier fails to show that the state court's decision involved an unreasonable application of *Cuyler* or was based on an unreasonable factual determination, he is not entitled to relief on Ground One.

## B. Ground Two

Carrier raises a distinct claim of ineffective assistance of counsel under *Strickland* for not calling Pierre. The state court found that counsel was not ineffective for failing to call Pierre. The state court found counsel's testimony more credible than Pierre's and Carrier's testimony. (Doc. 10-2, Ex. 19, p. 19.) The state court found credible Fontan's testimony regarding the decision not to call Pierre, including her testimony about her conversations with Carrier concerning Pierre's proposed testimony and about Carrier's agreement with not calling Pierre. (*Id.*, pp. 19-20.) The state court found that Fontan made a strategic decision not to call Pierre at trial, "given her investigation of his proposed testimony and her serious concerns about his veracity and credibility with a jury." (*Id.*, p. 19.) The state court found that Carrier failed to show that Fontan performed deficiently. (*Id.*, p. 20.)

The state court's ruling was reasonable. Carrier does not rebut the presumption of correctness afforded to the state court's factual finding that Fontan's testimony was credible. *See Rolling*, 438 F.3d at 1301. Nor does he rebut the presumption of correctness applicable to the state court's factual finding that Fontan made a strategic decision not to

16

call Pierre. *See Franks v. GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020) ("The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct." (quoting *Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998))); *see also Knight v. Fla. Dep't of Corr.*, 936 F.3d 1322, 1340 (11th Cir. 2019) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." (quoting *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995))).

To show entitlement to relief, Carrier must demonstrate that counsel's strategic decision was patently unreasonable. *See Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (stating that counsel's strategic decision "will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it" even when the decision "appears to have been unwise in retrospect") (citation omitted); *see also Franks*, 975 F.3d at 1176 ("Because *Strickland* allows for a range of strategic choices by trial counsel, so too is there considerable leeway for state courts to determine the reasonableness of those choices. . . . For Franks to prevail, then, he would have to show that *no* reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct.").

17

Again, the testimony that the state court found credible shows that Fontan and Pierre shared a concern about Pierre's credibility because his statements were inconsistent and conflicted with the evidence, and therefore decided not to call him. Under these circumstances, Carrier does not show that counsel's strategic decision not to call Pierre was patently unreasonable. Because Carrier does not show that the state court unreasonably applied *Strickland* or that its decision was based on an unreasonable factual determination, he is not entitled to relief on Ground Two.

## V.    CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Carrier must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Carrier has not made the requisite showing. Finally, because Carrier is not entitled to a COA, he is not entitled to appeal in forma pauperis.

It is therefore **ORDERED** that Carrier's Petition for Writ of Habeas Corpus, (Doc. 1), is **DENIED**. The **CLERK** is directed to enter judgment against Carrier and in Respondent's favor and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on December 19, 2023.

Kathryn Kimball Mizelle
United States District Judge

19